**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**

In re:

                                                      \*

**STEVE CLARK DRYWALL, INC.**               **Case No.  25-21471**

                                             \*        **Chapter 11**

      **Debtor**                         \*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

<u>**APPLICATION TO EMPLOY COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION UNDER 11 U.S.C. § 327(a) AND FIXING EVERGREEN TERMS OF RETAINER AND APPROVING SAME BY ADMINISTRATIVE ORDER UNDER 11 U.S.C. § 328(a) and FOR USE OF PROPERTY OF THE ESTATE OUT OF THE ORDINARY COURSE PURSUANT TO 11 U.S.C. § 363(b)**</u>
**(AND NOTICE OF MOTION)**

        STEVE CLARK DRYWALL, INC. (the "Debtor") by and through John D. Burns, Esquire and The Burns Law Firm, LLC (the "Firm") hereby files this Application to Employ Counsel for the Debtor And Debtor In Possession Under 11 U.S.C. § 327(a) And Fixing Evergreen Terms of Retainer And Approving Same By Administrative Order Under 11 U.S.C. § 328(a) and For Use of Property of the Estate Out of the Ordinary Course Pursuant to 11 U.S.C. § 363(b) (the "Application"), and states as follows:

**<u>JURISDICTION:</u>**

        1.        The Bankruptcy Court has subject matter jurisdiction under 28 U.S.C. §§ 1334(a), (b) and 157(b)(2)(A).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. § 1409.  The Debtor and the Firm consent to the entry of final Orders by the Bankruptcy Court herein.

**<u>FACTUAL STATEMENT:</u>**

        2.        On December 8, 2025 (the "Petition Date") the Debtor filed a voluntary

petition for relief under Chapter 11 in the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court").  Schedules of Assets/Liabilities and Statement of Financial Affairs were filed on January 5, 2026.

6.      The Debtor is a contracting company providing large and medium sized jobs on drywall installation.  The owner and President is Steve Clark.  The cause of the bankruptcy filing was an acceleration of litigation against the Debtor in particular arising from long standing supply chain problems and delays in construction, much of which was precipitated by COVID 19 factors a few years ago.  At present, the Debtor is proposing a reorganization to restructure these debts over a commitment period.

8.      On December 4, 2025, the Debtor by Mr. Clark executed a Retainer Agreement with the Firm, a copy of which is attached hereto as **Exhibit 1**.  The Retainer Agreement contains various terms which are necessary to the Firm's engagement, and which the Bankruptcy Court should consider and approve.  Specifically, the Firm has received a pre-petition retainer of $30,000.00 and advanced costs of $2,000.00.  The sum of $32,000.00 was requested and received from the Debtor.  The initial retainer and advanced costs were duly disclosed by Rule 2016(b) filing on December 8, 2025.  Mr. Clark also executed a Guaranty of Payment (the "Guaranty") personally as to the Debtor's fees and costs which will be owing to the Firm. The Guaranty is attached within *Exhibit 1*.

9.      The Firm charges $595.00 per hour for the undersigned's services; $455.00 per hour for an associate, which is presently covered by Melissa Rashbaum, and $295.00 per hour for paraprofessionals.  These rates can change on annual notice and it should be noted the Firm has not changed its rates for several years. The Firm contends the hourly rates are fair, reasonable and at market rate.

2

9.      The Retainer Agreement also contains an "evergreen" retainer which requires payment of retainers by Debtor to restore the escrow retainer by billed monthly invoices less a twenty (20%) percent holdback.  Thus, by hypothetical if time on accrual in a billing period is $5,000.00 on fees incurred and $150.00 on expenses, and assuming the evergreen retainer is $30,000.00, the Firm would be entitled after presentment of the invoice to the United States Trustee and the Debtor (and by filing on the ECF docketing system as a "Line") and the passage of ten (10) days to receive $4,000.00 in fees from the Debtor (eg; $5,000.00 less twenty (20%) percent holdback) and $150.00 in expenses which would be remitted to operating account upon receipt as earned from initial deposit to escrow.  The $1,000.00 twenty (20%) percent hold back would be deposited to escrow as a retainer pending fee application.  Fee applications are required on an interim basis contemplated every to be every one hundred twenty (120) days and a final fee application is required.  The Bankruptcy Court would resolve any dispute over the invoice statement objections by the United States Trustee or Debtor or any other party in interest on the ECF system or over objections to fee applications as it does in the ordinary course.

10.     The evergreen retainer is subject to alteration for changes in scope of the work at hand and otherwise, with further application to the Bankruptcy Court.  The evergreen presents a balancing of rights to the estate and to the Firm; namely, that in the event of a required material term in the retainer that needs to be altered, the Firm shall seek approval of same from the Bankruptcy Court and notice to the estate.  If such request is denied, the Firm's rights to withdraw appearance are preserved and the Firm may then seek to withdraw as it cannot make a putative debtor's ongoing insolvency an event of insolvency for the Firm.  The Firm of course preserves its rights to seek withdrawal at any time in this case following compliance with local rules.  Significantly, the retainer preserves the right of the Firm to part ways with the Debtor in

3

the event the Debtor is not following the advice of counsel, or is making pro se filings.  The

Debtor makes all substantive decisions as to the administration and direction of the Chapter 11

case at issue.  The Firm makes only tactical or procedural choices in the representation of the

Debtor.  However, Debtor as with all clients of the Firm understand the importance of abiding by

Firm guidance to the ultimate disposition of the case.  If a client does not want or need the advice

of the counsel they have chosen, there is no need for the Firm to remain as counsel in such a

situation.

> 11.     The Retainer Agreement specifically provides that "[t]o the extent there is a

material change for scope in work such as an appeal or a collateral or extrinsic litigation requested

as in another Court proceeding for entry of appearance, the Firm in its judgment may request a

supplemental retainer to hold in escrow against such other work.  Such request must be first

submitted by application to the Bankruptcy Court and approved on notice to the extent the source

of payment is property of the estate."  To be clear, the Firm is not a creditor of this Debtor and is

not looking to become a creditor of the Debtor because it cannot seek an increase in retainers to

ensure it does not become a creditor herein.  In turn, the Firm recognizes herein that if a

circumstance changes or there is an increase in work flow that makes a prior retainer base

inadequate, that the Bankruptcy Court should be on notice as should the estate by notice and

motion.

> 12.     The Firm retains a charging lien for any award, settlement or judgment that

constitutes a basis for same under Maryland law within the Retainer Agreement.  This is a

statutory lien which needs to be recognized within the Retainer Agreement, and it only applies to

the extent it would apply under Maryland law to protect attorneys as a matter of public policy.

> 13.     The Debtor has selected John D. Burns, Esquire and The Burns LawFirm,

4

LLC for the reason that the Firm has had considerable experience in business and Chapter 11 bankruptcy matters and the Debtor believes that Mr. Burns and The Burns LawFirm, LLC are well qualified to represent the Debtor in this proceeding.

14.     Mr. Burns is the Managing Member of The Burns LawFirm, LLC and has performed services in the bankruptcy arena since his Judicial Clerkship for the United States Bankruptcy Court for the District of Maryland 1991, over 30 years ago.  Mr. Burns has served as the National Chair of the American Bar Association/YLD Bankruptcy Laws Committee between 1998-2000.  He has also served as Bankruptcy Chair of various County and local bar associations, including Anne Arundel County, Prince George's County, and Howard County.  He has served as both a Board Member to the Bankruptcy Bar Association of Maryland, and was the Divisional-Assistant Chair for Greenbelt in that organization.  Mr. Burns regularly provides practical and insightful seminars on bankruptcy law and practice, previously under MICPEL, and now under similar organizations.  Mr. Burns was a member of the National Association of Consumer Bankruptcy Attorneys, aiding in the development of Title 11 law as it affects debtors in that arena as well.   Additionally, Mr. Burns has successfully aided in the successful confirmation of prior Chapter 11 plans of reorganization in the United States Bankruptcy Courts.

15.     The professional services the said law firm is to render include:

(a)     Providing the Debtor with legal advice concerning their powers and duties as Debtor-in-possession, and assist from a bankruptcy necessity any ancillary litigation ongoing with the Debtor;

(b)     Preparation of, as necessary, applications, answers, orders, reports and other legal papers, to be filed by the Debtor;

(c)     Filing and prosecution of adversary proceedings against necessary parties adverse to the Debtor or their estate;

(d)     Preparation of any disclosure statement or plan of reorganization;

5

(e)     Performance of Chapter 11 services for the Debtor and the estate which may be necessary herein, with the exception of monthly operating reports for which the Debtor shall either employ an accountant on separate Court Order, or prepare and file same on their own initiative; and

(f)     Such matters as may be necessary or appropriate to the foregoing although not specifically recited herein.

16.     To the best of the Debtor's knowledge, except as noted herein, said attorney and said Firm are "disinterested person" as that term is defined 11 U.S.C. § 101(14). Mr. Burns and The Burns LawFirm, LLC have no connection with the United States Trustee, the creditors herein, or any person employed by the United States Trustee other than as specified herein or in the Rule 2014 verified statement contained herewith, other than casual acquaintances with personnel in the Court system and the United States Trustee's office from prior professional connections.  A copy of the Firm's verified statement is attached hereto and incorporated herein as **Exhibit 2**.  The undersigned and the Firm do not represent Mr. Clark personally.

18.     Both The Burns LawFirm, LLC and the Debtor understand that no post-petition fees may be paid to the operating account of The Burns LawFirm, LLC from property of the estate other than as authorized by the monthly Evergreen Retainer or upon an Order of the Bankruptcy Court (however, a fee application is required whether the case is dismissed or otherwise finalized).

## DISCUSSION:

19.     The Firm seeks employment under 11 U.S.C. §§ 327(a) and 328(a), which provide in material respect that:

Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not

6

> hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a) (2025)

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on *any reasonable terms and conditions of employment,* including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a) (2025) (emphasis supplied)

20.     The Firm desires and requests that the Bankruptcy Court authorize employment of the Firm under Sections 327(a) and 328(a) of the Code subject to compensation and reimbursement of expenses under Section 330 of the Code.

21.     There are various forms of "evergreen" retainers and importation of standard non-bankruptcy billing and retainer accrual practices from the market practices at large has received some infrequent but focused attention in various case law that has issued. *See eg*; *In re Insilco Technologies, Inc.*, 291 B.R. 628 (Bankr. D. Del. 2003).

22.     An "evergreen" retainer is a form of a security or special retainer rather than a general retainer. "[T]he holder of an evergreen retainer intends to be paid its interim fees and expenses out of operating cash. Such a position is designed to minimize a professional's risk of non-payment if a debtor's financial position deteriorates, an estate becomes illiquid and does not have sufficient cash flow to pay professional fees." *See, Insilco* at p. 632. Although the

7

United States Trustee there argued that cash collateral carve outs and administrative limited holdback Orders were appropriate to minimize risk (risk minimizing factors not present in this present case), the debtors in *Insilco* reasoned that a "market driven approach" should allow the evergreen retainers to be held by the professionals through the case because they are common in the market generally for professionals.  The *Insilco* Court found that a "reasonable terms" flexible standard as required by Section 328(a) of the Code should guide the tribunal's review.  *Id.* at 633.

23.     The Third Circuit has driven the forward looking "market driven" approach for evaluation of professional services and retention terms in Chapter 11 matters.  *See eg; In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 852 (3d Cir.1994) (market driven approach as applied to paralegal usage); *United Artists Theatre Co. v. Walton*, 315 F.3d 217, 229 (3rd Cir. 2003) ("we have recognized that § 330, which deals with what constitutes "reasonable" compensation for professionals, takes a "market-driven" approach").  There was no dispute in the record either from the United States Trustee or otherwise on the established fact that "evergreen" retainers are common in the marketplace. *Insilco* at 634.

24.     *Insilco* provided a suggested list of factors to evaluate in decision over retention, some of which are germane hereto:

    (i)     *Whether terms of an engagement agreement reflect normal business terms in the marketplace* (the Firm responds that as determined by "market driven" criteria there is no real dispute that attorneys may take "evergreen" retainers and apply and replenish them as the case needs develop on a practical basis generally – since early 1990's per *Insilco*);

    (ii)    *The relationship between the Debtor and the professionals, i.e., whether the parties involved are sufficiently sophisticated business entities with equal bargaining power who engaged in an arms-length negotiation* (the Debtor and its principal Mr. Clark are sophisticated business savvy professionals. Mr. Clark has been in business as a contractor and a large scale dry wall seller and installer to some

8

significant housing developments going back to the 1990's or before
that time.  These are not naïve consumer debtors who have no basis
to understand their contractual terms and relative positions of
bargaining power);

(iii) *Whether the retention, as proposed, is in the best interests of the
estate* (the engagement is in the best interests of the estate because
not only does it allow for the Firm to aid and assist the Debtor to
continue operating and supply and finish numerous outstanding
drywall jobs, but it also permits an expansion of the business as time
continues and the Plan of Reorganization makes installments on pre-
petition obligations.  Shutting down a multi-decade contractor
because it cannot pay counsel for services in the near ordinary
course post-petition does not aid the estate, it harms the estate which
would also not receive payment);

(iv) *Whether there is creditor opposition to the retention and retainer
provisions* (It is hoped that there will not be opposition to the
Retainer Agreement from creditors, not only because the Firm's
efforts will aid in the creditors being paid by a sale plan, but also
because without adequate retainers the Debtor would not have
counsel, and this case would be a fire sale liquidation, which does
not serve the estate or the Debtor well); and

(v) *Whether, given the size, circumstances and posture of the case, the
amount of the retainer is itself reasonable, including whether the
retainer provides the appropriate level of "risk minimization,"
especially in light of the existence of any other "risk-minimizing"
devices, such as an administrative order and/or a carve-out* (a
$30,000.00 initial retainer is on the lower side of operating Chapter
11 reorganization cases.  There are no other risk minimizing factors
here because there has to be monies to fund such alternatives. There
is no cash collateral that appears and there is no administrative Order
where there is no cash to fund such an alternative monthly payment
schema not based upon monthly billing- this evergreen proposes use
of operating cash from the Debtor to make the case work on a
functional level. Any other arrangement would be dysfunctional
because there would be no money for retainers and no
reorganization)

*Insilco,* 291 B.R. at 634.

25.    This is a risky case for any counsel to appear within because without the

automatic stay, the Debtor lacks cash flow to fund its operations.  The Debtor must continue and

expand its operations from contract cure to contract expansion and thereby under its forthcoming

Plan of Reorganization increase its jobs and performance, which imposes increased operating

costs.  No other credit provider than counsel would step into an unsecured loan situation on a

monthly basis without installment payments being made as fees costs were being incurred.

Without an Evergreen Retainer, counsel would not consider engagement because of the

commensurate risks of being unable to avoid substantial monetary losses.

      26.     Although *Insilco* [291 B.R. p. 636] suggests that the professional person

should maintain the evergreen retainers in escrow until the conclusion of the Chapter 11 case (or

as otherwise agreed) because the retainer agreement therein so provided, this is not required of all

cases reviewing evergreen retainer and associated engagements.  There is no evidence in *Insilco*

that a "market driven" approach would require counsel to hold all evergreen retainers in escrow

until the conclusion of a case, nor is that prevailing practice.  Nor is there a provision in the

Retainer Agreement here that would require such maintenance of all retainers in escrow until the

final fee application. The Firm here suggests that the professional persons in *Insilco* had the

benefit of risk minimizing factors such as the aforementioned administrative orders and carve outs

from cash collateral in a heavily leveraged case. This Debtor is also under great financial strains

given the lack of substantial equity in the Property.  The Firm *has none* of the "risk minimizing"

benefits that existed in *Insilco*.  The Firm would therefore request the responsibility and right to

submit fee applications every 180 days, or sooner, consistent with the decision of *In re

Benjamin's- Arnolds, Inc*., 123 B.R. 839, 842 (Bankr. D. Minn. 1990) and apply all retainers in

escrow to be replaced with a new retainer.

      27.     In *Benjamin's-Arnolds*, the Bankruptcy Court likewise reviewed

"evergreen" retainers albeit a decade or more before *Insilco*. The Bankruptcy Court for the

District of Minnesota opined under a Section 327(a) application to employ that "evergreen" retainers should be approved and that "such retainers were common outside the context of bankruptcy" and that they should not be prohibited absent strong justifications to the contrary. *Benjamin's-Arnolds*, 123 B.R. at 840.   The *Benjamin's-Arnolds* case emphasized that such engagement terms can facilitate prompt and expedient reorganization given that counsel was promising a plan within exclusivity and that such engagement would allow counsel to move the case along to an earlier reorganization.

28.     Rejecting arguments by the United States Trustee that such evergreen retainers would lead to disparity among administrative claimants in an insolvency, the Minnesota Court therein noted by a decretal paragraph that a bankruptcy court could disgorge such retainers if it found cause to do so under Section 328(a) of the Code because the terms of employment had proven improvident.  *Benjamin's-Arnolds*, 123 B.R. 842.  However, a "finding of improvidence pursuant to section 328 is a difficult determination to make and therefore, courts rarely disturb the original terms and conditions of a professional's employment." *In re Yablon*, 136 B.R. 88, 92 (Bankr.S.D.N.Y. 1992); See also, *In re Xo Communications, Inc.,* 323 B.R. 330, 339 (Bankr. S.D.N.Y. 2005).  Some judges don't see it that way, but fee agreements should not be rewritten or disgorged by the Bankruptcy Courts as an ordinary event. *Cf. In re: Raocore Technologies, LLC,* (24-00065 Bankr. D.D.C. 2024) (Bankruptcy Court discouraged evergreen retainers in smaller cases and saw fit to disgorge counsel after pending application to employ was denied in part post-petition).

29.     Finally, an affirmative requirement in *Benjamin's-Arnold* was required that interim fee applications be filed on a 120 day basis. Counsel here has no problem with that requirement and encourages it.  Here 120 days is suggested in the Retainer Agreement; however,

the Firm will abide by the Court's direction in that respect.

      30.    The Firm's rates should be approved as reasonable under Section 328(a); the evergreen particulars should be approved under Section 328(a); the use of an evergreen retainer to the extent if implicates Section 363(b) and the use of property of the estate out of the ordinary course of business should be approved as well on notice as given here; the Firm should be approved as disinterested and as holding no adverse interest to the estate and the Debtor herein under Section 327(a) of the Code.

      31.    The Firm finally notes that evergreen retainers in one form or another with installment retainers and hold-backs have been prolific in this District of Maryland for many years in large cases and small ones, perhaps named as different things from time to time. *See, eg; Cleary-Packaging, LLC*, 21-10765-MH – Dkt. 18 ¶19; 02/21/21.  The Application should be approved herein in all respects.

      32.    No memorandum is attached hereto pursuant to Local Rule 9013-2.

<u>**DEBTOR'S CONSENT:**</u>

I ASK FOR THE RELIEF HEREIN TO BE GRANTED.

January 13, 2026                           <u>/s/ Steven Riley Clark</u>
                                          Steven Riley Clark

<u>**NOTICE:**</u>

    ANY OBJECTION TO THIS NOTICE MUST BE FILED WITH THE OFFICE OF THE CLERK, UNITED STATES BAKRUPTCY COURT FOR THE DISTRICT OF MARYLAND, 6500 Cherrywood Lane; Greenbelt, MD 20770 NO LATER THAN TWENTY-ONE (21) DAYS FROM THE SERVICE OF THIS NOTICE AND A COPY MUST BE SERVED UPON AND RECEIVED BY UNDERSIGNED COUNSEL.  IF NO OBJECTIONS ARE TIMELY FILED, THE PROPOSED ACTION MAY BE APPROVED WITHOUT FURTHER ORDER OR NOTICE.  THE COURT, IN ITS DISCRETION, MAY CONDUCT A HEARING OR DETERMINE THE MATTER WITHOUT A HEARING REGARDLESS OF WHETHER AN OBJECTION IS FILED.  AN OBJECTION MUST STATE THE FACTS AND LEGAL GROUNDS ON WHICH THE OBJECTION IS BASED AND THE BELOW REFERENCED

COUNSEL IS TO BE CONTACTED IF PARTIES IN INTEREST HAVE QUESTIONS.

WHEREFORE, the Debtor requests that this Honorable Court enter an Order that:;

(i)     Grants the Application;

(ii)    Authorizes the employment of John D. Burns, Esquire and The Burns LawFirm, LLC to represent the Debtor and debtor in possession in this case under Chapter 11 of the Bankruptcy Code effective from the Petition Date under Sections 327(a) and 328(a) of the Code;

(iii)   Approves the Retainer Agreement and the "evergreen" provisions therein for payment on open monthly fee invoices incurred post-petition by Debtor to operating with a twenty (20%) percent holdback to be remitted by Debtor to escrow monthly and reimbursement monthly on all expenses incurred by Debtor all in accordance with more complete provisions of the Evergreen Retainer attached hereto such twenty (20%) percent holdback to be paid to operating with any unpaid invoices upon approval of fee applications filed in this case, both interim and final; and

(iv)    Grants such other relief as equity and justice may require.

Respectfully submitted,

By:     */s/ John D. Burns*
        John D. Burns, Esquire
        The Burns Law Firm, LLC (22777)
        6305 Ivy Lane – Suite 340
        Greenbelt, Maryland 20770
        (301) 441-8780
        info@burnsbankruptcyfirm.com
        *Chapter 11 Counsel to Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of January, 2026, a copy of the foregoing Application/Notice and Order with Exhibits was served via first-class mail, postage prepaid, or by

13

ECF on registered users, or by other means, upon:

**SERVICE VIA ECF:**
Morgan, Courtney L. (USTP) courtney.l.morgan@usdoj.gov
Office of the United States Trustee

**SERVICE VIA MAIL:**
(Matrix of Creditors)

**SERVICE VIA EMAIL:**
Steve Clark, Owner of
Debtor

/S/ John D. Burns
John D. Burns