# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
# (Greenbelt Division)

| | |
|---|---|
| **In re:** <br><br> **STEVE CLARK DRYWALL, INC.,** <br><br> Debtor. | Case No.: 25-21471-LSS <br><br> Chapter 11 |

### LIMITED OBJECTION TO DEBTOR'S MOTION TO EMPLOY COUNSEL

Matthew W. Cheney, the Acting United States Trustee for Region 4 ("United States Trustee"), by counsel, hereby objects to the Application to Employ Counsel for the Debtor and Debtor in Possession Under 11 U.S.C. § 327(a) and Fixing Evergreen Terms of Retainer and Approving Same by Administrative Order Under 11 U.S.C. § 328(a) and for Use of Property of the Estate Out of the Ordinary Course Pursuant to 11 U.S.C. § 363(b) (the "Motion") filed on January 13, 2026.  ECF 21.

The United States Trustee does not oppose the employment of The Burns Law Firm, LLC ("BLF") as counsel to Steve Clark Drywall, Inc. (the "Debtor") pursuant to 11 U.S.C. § 327(a) at this time.  Rather, the United States Trustee objects to the retainer agreement (the "BLF Retention Agreement") governing BLF's employment – specifically, the evergreen retainers and related fee provisions (such language, collectively, the "Evergreen Provisions") contained therein because the Motion does not include sufficient information to determine whether they are reasonable terms and conditions of employment as required by 11 U.S.C. § 328(a) and the information currently available weighs in favor of their denial.  The Evergreen Provisions should also be denied because they prevent the Motion from stating the proposed compensation arrangement with specificity as required by Bankruptcy Rule 2014(a)(2)(E).  The United States Trustee further objects to the Motion's request for approval of the Evergreen Provisions by

1

administrative order pursuant to 11 U.S.C. § 328(a) and/or approval of the Monthly Payment Procedures (as defined below) because they are unnecessary and the circumstances of the case do not merit the implementation of multiple risk mitigation devices to protect BLF's fees. Finally, the United States Trustee objects the BLF Retention Agreement because it contains language that violates the Maryland Attorney Rules of Professional Conduct ("MARPC"). Such language does not constitute reasonable terms and conditions of employment as required by 11 U.S.C. § 328.[1]

## I.     BACKGROUND

1. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334(a), (b) and 28 U.S.C. § 157.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. The United States Trustee is entrusted with monitoring the applications of attorneys for both employment and compensation. 28 U.S.C. §§ 586(a)(3)(A), (I).

4. The Debtor commenced this case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code on December 8, 2025 ("Petition Date"). ECF 1.

5. A Disclosure of Compensation of Attorney for Debtor (the "Compensation Disclosure") was also filed on the Petition Date. ECF 3. The Compensation Disclosure indicates the Debtor paid BLF $23,327.35 in an initial retainer. Id. This figure does not include the additional $9,672.65 that the Debtor paid to BLF for "prepetition fees, filing costs and copies costs" prior to the Petition Date, for a total of $33,000. Id.

6. The Debtor filed its Schedules A-J ("Schedules") and Statement of Financial

---

[1] Note that similar issues regarding evergreen provisions and other language that may violate MARPC contained in a different iteration of a retainer executed by BLF is currently pending before Judge Ruark in *In re 17Farmhaden, LLC*, Case No. 25-14496. A hearing on the matter is set for February 12, 2026.

2

Affairs ("SOFA") on January 5, 2026.  ECF 18, 19.

7. Line 28 of the SOFA indicates that the Debtor is 100% owned by Steven Riley Clark ("Clark").  ECF 19.

8. The Debtor filed the Motion on January 13, 2026.  ECF 21.

9. The Motion notes that BLF received a pre-petition retainer from the Debtor in the amount of $30,000 and advanced costs of $2,000, for a total of $32,000.  Id. at ¶8.

10. Additionally, the Debtor's 100% owner, Steven Clark ("Clark") agreed to be personally liable for and guaranty "the Debtor's fees and costs which will be owing to [BLF]" (the "Guaranty").  Id.

11. The Motion further explains that the BLF Retention Agreement contains Evergreen Provisions that require "payment of retainers by Debtor to restore the escrow retainer by billed monthly invoices less a twenty percent (20%) holdback."  Id. at ¶9.  BLF argues it should be entitled to monthly payments whereby, after filing a monthly invoice on the docket and assuming no objection to such invoice was lodged by the Debtor, the United States Trustee, or a party in interest within 10 days of the filing, BLF would be entitled to an immediate payment of 80% of the fees stated in the invoice from the Debtor upon expiration of the 10-day period (such language in this paragraph, collectively, the "Monthly Payment Procedures").  Id.

12. Moreover, the Motion highlights that the Evergreen Provisions are "subject to alteration for changes in scope of the work at hand or otherwise, with further application to the Bankruptcy Court."  Id. at ¶10.  However, the Motion also quotes the BLF Retention Agreement directly, stating that the BLF Retention Agreement "specifically provides that '[t]o the extent there is a material change for scope in work such as an appeal or a collateral or extrinsic litigation requested as in another Court proceeding for entry of appearance, [BLF] in its

judgment may request a supplemental retainer to hold in escrow against such other work. Such request must be first submitted by application to the Bankruptcy Court and approved on notice *to the extent the source of payment is property of the estate*.'" Id. at ¶ 11 (emphasis added).

13. The Motion attaches the BLF Retention Agreement and Guaranty as Exhibit 1 which state, in relevant part:

- The Debtor agreed to an initial $30,000 retainer ("Initial Retainer") plus $2,000 for costs, all of which have already been received by BLF from the Debtor. Exhibit 1 at p.1 of 5.

- The BLF Retention Agreement states that it is "an EVERGREEN retainer agreement and contemplates [Debtor's] payment of retainers to supplement the [Initial Retainer] accompanied by an Application for Employment and pursuant to §§ 105, 328, and 331 of the Bankruptcy Code establishing procedures for interim compensation and reimbursement of expenses for Chapter 11 professionals. Section 331 of the Bankruptcy Code provides that all professionals employed under §§ 327 and 1103 of the Bankruptcy Code may apply to the Court for interim compensation and reimbursement of expenses every 120 days, or more often if the Court permits. 11 U.S.C. § 331. In addition, § 105(a) of the Bankruptcy Code authorizes the Court to issue any order 'necessary or appropriate to carry out the provisions of the [Bankruptcy Code].'" Id.

- BLF "shall issue an invoice for the preceding month to the [Debtor] and the Office of the United States Trustee ("UST")" and "if no timely objection to such statement is made by [the Debtor] or the UST within 10 days of issuance the Debtor shall pay the fees incurred for the prior month, less a twenty percent (20%) holdback on payment, and pay one hundred percent (100%) of the expenses for reimbursement incurred in the prior month to [BLF]." Id.

- If the Debtor or UST object to the statement, BLF "shall file its request for allowance in a prompt manner with the Bankruptcy Court copying the UST and [the Debtor], and the Bankruptcy Court shall resolve any dispute." Id.

- Additionally, the Debtor "will not be required to pay the twenty percent (20%) holdback to [BLF] until such time until after the Court's approval of the relevant Interim Fee Application. All payments would be subject to the Court's subsequent approval as part of the interim fee application process, occurring approximately every 120 days, and the final fee application process at the end of the [Debtor's] bankruptcy case." Id.

- The Initial Retainer will be held by BLF as "a security against non-payment of fees and costs in this matter. [BLF] may apply such security in its final fee application against open invoices with a twenty percent (20%) holdback or if such retainer is insufficient to pay the final fee application, the Debtor shall at that time fund any sum awarded to [BLF]

4

above the twenty percent (20%) holdback." Id.

- The BLF Retention Agreement further states that "[t]o the extent there is a material change for scope in work such as an appeal or a collateral or extrinsic litigation requested as in another Court proceeding for entry of appearance, [BLF] in its judgment may request a supplemental retainer to hold in escrow against such other work. Such request must be first submitted by application to the Bankruptcy Court and approved on notice *to the extent the source of payment is property of the estate*.'" Exhibit 1 at p. 2 of 5 (emphasis added).

- The BLF Retention Agreement also states that "[i]f [BLF] is terminated by [the Debtor] or if other cause exists in the sole discretion of [BLF], [BLF] may limit and condition correspondence solely in writing without further oral communication pursuant to MF. R. PROF. COND. 1.2(c) and [the Debtor's] consent to [the BLF Retention Agreement] represents [the Debtor's] informed consent to this provision." Id.

- The BLF Retention Agreement also states that, "[s]ubject to fee application or other order of the Court, this retainer agreement authorizes your consent for [BLF] to deposit to operating and sweep to any outstanding invoice or charges on file any monies received by [BLF] respective to [the Debtor's] name and to apply same against [BLF's] outstanding invoices or charges, whether representation is active or has concluded." Id.

- It is also a breach of the BLF Retention Agreement if the Debtor should "fail to act in compliance with the advice of counsel or fail to actively pursue and prosecute the civil matter upon which [BLF] is engaged." Exhibit 1 at p.4 of 5.

- The Guaranty is also included with Exhibit 1, which is signed by Clark (defined as "Guarantor"), and states that Clark "personally hereby agrees to guaranty payment of any and all fees and costs incurred and approved by the Bankruptcy Court in respect of the Chapter 11 Bankruptcy filed/to be filed by the Debtor without any need or obligation by [BLF] to first make demand upon the principal obligor, namely the Debtor." The Guaranty further states that "Guarantor has had informed consent on such guaranty including the right of Guarantor to seek the advice of independent counsel in the decision to become a Guarantor of the Debtor's legal obligations." Exhibit 1 at p. 5 of 5.

## II.     ARGUMENT

14.     The Bankruptcy Code requires bankruptcy courts to supervise attorney/client relationships, which specifically includes the oversight of legal fees. *In re Printing Dimensions, Inc.*, 153 B.R. 715, 718 (Bankr. D. Md. 1993).

15. A professional seeking to be employed under 11 U.S.C. § 327 must file an application stating specific facts showing "any proposed arrangement for compensation." Fed R. Bankr. P. 2014(a)(2)(E).

16. The debtor may employ or authorize the employment of any professional person under 11 U.S.C. § 327 on "any reasonable terms and conditions of employment" so long as the debtor obtains approval of the bankruptcy court. 11 U.S.C. § 328(a). Though bankruptcy courts have discretion when approving reasonable terms and conditions for the employment of a debtor's counsel, this Court has held that such discretion should not be exercised "either to deprive the debtor-in-possession of property prematurely or to abrogate the court's responsibility and authority to supervise the allowance of attorney's fees effectively." *In re Printing Dimensions, Inc.*, 153 B.R. at 718.

17. This Court should deny the Evergreen Provisions because the Motion does not contain sufficient evidence to prove they are appropriate in this case, whereas the currently known facts weigh in favor of their denial because they are not reasonable terms and conditions as required by 11 U.S.C. § 328(a). The Evergreen Provisions should also be denied because they prevent the Motion from stating the proposed compensation structure with specificity as required by Bankruptcy Rule 2014(a)(2)(E). Moreover, the Motion's request for approval of the Monthly Payment Procedures should be denied because they are unnecessary and the circumstances of the case do not merit the implementation of multiple factors to protect BLF from the risk of non-payment of its fees. Finally, language in the BLF Retention Agreement violates the MARPC and are not reasonable terms and conditions as required by 11 U.S.C. § 328.

**A. The Evergreen Provisions Should be Denied Because the Motion Lacks Sufficient Information to Show That They are Reasonable Terms and Conditions as Required by 11 U.S.C. § 328(a) and the Facts and Circumstances Currently Known Weigh in Favor of Denial.**

18.     Courts have ruled that evergreen retainers are permissible in certain cases. The determination as to whether evergreen retainers presented in a case are reasonable "must be tailored to Bankruptcy Code requirements, including the particular circumstances of a chapter 11 proceeding, the court's supervisory role and the interests of the various constituents." *In re Insilco Techs., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003); *see also In re Raocore Tech., LLC*, No. 24-00065-ELG, 2025 WL 828880, at *5 (Bankr. D.D.C. Feb. 20, 2025).

19.     Courts consider the following factors when determining whether the terms and conditions of a proposed retention agreement are reasonable: (i) whether terms of an engagement agreement reflect normal business terms in the marketplace; (ii) the relationship between the debtor and the professional seeking retention, including whether they had equal bargaining power in an arms-length negotiation; (iii) whether the terms of the retention are in the best interests of the estate; (iv) whether any creditors oppose the retention or retainer provisions; and (v) whether the amount and terms of the retainer are reasonable when considering the size and circumstances of the case. *Insilco Techs.,* 291 B.R. at 634. This list is not exhaustive, nor should every factor be given equal weight. Id.

20.     The Motion does not contain sufficient information for the Court or parties in interest to apply the abovementioned test to determine if the Evergreen Provisions are reasonable pursuant to 11 U.S.C. § 328(a). For example, there is no information relating to the negotiation of the Evergreen Provisions between the Debtor and BLF, except to say that "the Debtor and [Clark] are sophisticated, business savvy professionals" who "are not naïve consumer debtors who have no basis to understand their contractual terms and relative positions of bargaining

7

power." Motion at ¶24(ii).  The Motion is devoid of evidence relating to the Debtor's interactions and negotiations with BLF.  Moreover, a debtor's experience in negotiating contracts relating to construction work does not equate to a similar understanding of the law and its rights as a client when negotiating a retention contract with an attorney.

21. It is also unclear from the Motion how the Evergreen Provisions are in the best interest of the Debtor.  In support of this factor, the Motion states that "the engagement is in the best interests of the estate" because it allows BLF to assist the Debtor.  Motion at ¶24(iii).  But the test is not whether the representation is in the best interest of the Debtor, but whether the *terms governing the representation* are in the best interest of the Debtor.  The Motion further states that "[s]hutting down a multi-decade contractor because it cannot pay counsel for services in the near ordinary course post-petition does not aid the estate, it harms the estate which would also not receive payment."  Motion at ¶24(iii).  This statement is perplexing.  Not only does it fail to address the applicable factor in the above test, but the Motion itself is seeking monthly payment of 80% of BLF's fees from the Debtor's operating cash while BLF continues to hold the Initial Retainer as security.  The Evergreen Provisions may arguably hamper the Debtor more than paying BLF's interim fee applications as they are filed and approved by the Court every 120 days per 11 U.S.C. § 331.  There is nothing in the record to suggest that the Debtor would be unable to pay BLF's fees through the usual interim fee application process, or that it is more beneficial for the Debtor to instead pay BLF pursuant to the Evergreen Provisions.

22. The facts and circumstances currently available support the denial of the Evergreen Provisions.  Notably, evergreen retainers are primarily used to mitigate risk if "the debtor's financial position deteriorates or an estate becomes administratively insolvent." *Raocore Tech.,* 2025 WL 828880, at *5.  It is unclear why the Evergreen Provisions are being proposed in

this case when the Guaranty already mitigates BLF's risk of non-payment of its fees and expenses from the Debtor.  The core function and reasoning behind the use of an evergreen retainer is thus rendered moot by the Guaranty.

23. The Guaranty provides for Clark's personal liability to BLF for "any and all fees and costs incurred and approved by the Bankruptcy Court in respect of the Chapter 11 Bankruptcy filed/to be filed by the Debtor without any need or obligation by the Firm to first make demand upon the principal obligor, namely the Debtor."  Motion at Exhibit 1.  Upon information and belief, BLF was apprised of Clark's finances when conducting its due diligence prior to filing the case.  Clark is the sole owner of the Debtor.  He and the Debtor shared the same bank account pre-petition, statements for which were provided to the United States Trustee by BLF at the outset of this case.  *See, e.g.*, ECF 18 at Schedule A/B, Line 3.  Line 30 of the SOFA also contains Clark's compensation received from the Debtor for the 12 months prior to the Petition Date.  ECF 19 at Line 30.

24. Even if BLF didn't have access to Clark's finances at the time the Guaranty was executed, the Guaranty provided enough value and security to BLF that BLF agreed to represent the Debtor.  There is nothing in the Motion or the record that suggests the Guaranty is insufficient.  Thus, the primary purpose of the Evergreen Provisions is already served in this case by the Guaranty.

25. Additionally, the Evergreen Provisions are not reasonable when considering the size and circumstances of this case.   In support of this factor, the Motion states that aside from the Initial Retainer, "[t]here are no other risk minimizing factors here because there as to be monies to fund such alternatives."  That is simply not the case because the Guaranty exists.

9

26. Moreover, the Evergreen Provisions allow BLF, in its own judgment, to request a supplemental retainer when there is "a material change for scope in work." BLF Retention Agreement at p. 2 of 5. This request must be "submitted by application to the Bankruptcy Court" but only "*to the extent the source of payment is property of the estate*." Id. (emphasis added). This condition, when read in conjunction with the Guaranty, gives BLF the power to determine the necessity, amount, payment, and payor of any future retainer. Approval of the Evergreen Provisions therefore affords BLF the ability to exclude additional retainers from this Court's initial purview by seeking payment of the retainers from Clark instead of the Debtor. Unilateral authority of counsel to request retainers, despite a potential retroactive review by the Court, is not sufficient disclosure to allow parties or the Court to determine if the BLF Retention Agreement is reasonable. *See Raocore Tech.,* 2025 WL 828880, at *6.

27. For the reasons set forth above, the Motion fails to include sufficient information in support of the approval of the Evergreen Provisions, which should be denied on this basis alone. Information currently available also weighs in favor of the denial of the Evergreen Provisions because they are not reasonable terms and conditions of employment as required by 11 U.S.C. § 328(a).

> **B. The Motion Cannot Specifically State the Proposed Arrangement for Compensation as Required by Bankruptcy Rule 2014(a)(2)(E) Because the Evergreen Provisions are Ambiguous.**

28. Bankruptcy Rule 2014(a)(2)(E) requires that a professional seeking to be employed under 11 U.S.C. § 327 file an application stating specific facts showing "any proposed arrangement for compensation." Fed.R.Bankr.P. 2014(a)(2)(E). The Motion does not contain this information.

29. The Evergreen Provisions prevent the Motion from specifically stating the date, amount, or circumstances under which additional retainers will come due – or even who the payor of any such retainer will be (i.e. the Debtor or Clark) when read together with the Guaranty. As currently drafted, BLF has the discretion to make these determinations.

30. Thus, the Motion should not be approved because it cannot comply with Bankruptcy Rule 2014(a)(2)(E) unless and until the Evergreen Provisions are removed and the compensation arrangement is stated with specificity in the BLF Retention Agreement and the Motion.

### C. The Court Should Deny the Monthly Payment Procedures Because They are Unnecessary in This Case.

31. Generally, professionals employed by a debtor must file applications for compensation subject to a hearing prior to payment of fees. *In re Knudsen Corp.*, 84 B.R. 668, 672 (B.A.P. 9th Cir. 1988); *see also* 11 U.S.C. § 331. Monthly conditional interim payments to a professional without prior approval from the Court are allowed in *rare* circumstances when (i) the case is an unusually large one in which an exceptionally large amount of fees accrue each month; (ii) the court is convinced that waiting an extended period for payment would place an undue hardship on counsel; (iii) the court is satisfied that counsel can respond to any reassessment; and (iv) the fee retainer procedure is the subject of a noticed hearing prior to any payment thereunder. *Knudsen Corp.*, 84 B.R. at 672-73; *see also In re Mariner Post-Acute Network, Inc.*, 257 B.R. 723, 730-31 (Bankr. D. Del. 2000) (adopting *Knudsen* factors and finding others may also be relevant, such as whether other fee arrangements cause hardship for the debtor, the effect of the procedure on the ability of the Court to review fee professional fee applications, the payment arrangement's economic impact on the debtor's ongoing operations, the ability of the debtor to reorganize, and/or the reputation of counsel). The professional has the

burden of proving that the proposed payment procedure is appropriate in the context of each case. *Mariner Post-Acute Network*, 257 B.R. at 731 (citing *In re Dividend Develop. Corp.*, 145 B.R. 651, 656 (Bankr. C.D. Cal. 1992)).

32. This is not a rare case in which monthly interim payments to counsel are required. The Debtor is a small business with one owner and no employees. The Debtor only has $2.1 million in unsecured debt. *See id* at Schedule E/F, Line 5. BLF has not shown any circumstance in which waiting the usual 120 days for payment would cause an undue hardship, especially considering the Guaranty. Additionally, BLF's fees should not be exceptionally high. For comparison, in *Knudsen*, where such an arrangement was allowed, the monthly fees exceeded $250,000 and in *Pan American Hosp. Corp.*, the monthly fees were likewise six figures. *See In re Pan American Hosp. Corp.*, 312 B.R. 706, 711 (Bankr. S.D. Fla. 2004). In *Cleary Packaging* cited by the Debtor in the Motion, counsel billed over $48,000 across the first three months of the case, with a large portion of the fees accrued for work on contested matters. *See* Case No. 21-10765 at ECF 45, 71, 86.

33. Further, it is unclear from the Motion whether BLF could respond to any reassessment made by the Court, whether any other fee arrangements would cause hardship for the Debtor, or the impact of the Monthly Payment Procedures on the Debtor's ongoing operations and/or its ability to reorganize because the Motion is otherwise devoid of any evidence relating to these factors. Accordingly, the Court should deny the Motion's request for approval of the Monthly Payment Procedures. The Motion does not contain sufficient information to carry BLF's burden of proof.

34. Moreover, the Monthly Payment Procedures may create a scenario in which the Debtor and BLF could be adverse to one another before this Court.[2] If there is an objection to BLF's monthly fees within the proposed 10-day period after presentment of the monthly invoice – including an objection to such fees raised by the Debtor – "[t]he Bankruptcy Court would resolve any dispute." Motion at ¶9. In this instance, the Debtor would either have to argue before the Court against its own attorney with respect to the approval or denial of the fees at issue for any month or, in the alternative, BLF would be charged with presenting both the Debtor's arguments and BLF's counterarguments to the Court.[3] This would occur during any month in which there is a fee dispute for the duration of the case. Functionally, the Monthly Payment Procedures do not work.

35. Aside from the above, Courts typically allow proposed counsel for a debtor to minimize financial risk of nonpayment in one way, not multiple ways. *See Pan American Hosp. Corp.,* 312 B.R. at 712-13 (allowing evergreen retainer but modifying prior order shortening time for interim fee requests so that counsel would only be able to seek interim fees every 120 days per 11 U.S.C. § 331 because the court was "not persuaded" that counsel had "proven it is necessary to implement multiple procedures to protect it from the risk of non-payment of its fees"); *Knudsen*, 84 B.R. at 672-73 (authorizing payment of fees on monthly basis where Court was satisfied funds were recoverable and an adequate opportunity for review of detailed fee requests was provided by interim and final fee application process); *In re Benjamin's-Arnolds,*

---

[2] The BLF Retention Agreement also contains language that it is "intended by both the [Debtor] and [BLF] to create a charging lien as set forth in the *Md. Bus. Occup. & Prof. Art. § 10-501* and a retaining lien to the extent provided by common law." Motion at Exhibit 1, p. 2 of 5. The United States Trustee submits that this language could similarly create an adverse relationship in its attempt to make BLF a creditor of the Debtor, but it has no effect because the cited statute is inapplicable.

[3] Corporate debtors must always be represented by counsel per Local Rules. *See* LBR 9010-1(a).

13

*Inc.*, 123 B.R. 839, 841-42 (Bankr. D. Minn. 1990) (allowing evergreen retainers but requiring fee applications every 120 days per 11 U.S.C § 331 and further allowing any party in interest to object to the continued holding of evergreen retainers at all such hearings). The professional has the burden of proving that the proposed payment procedure is appropriate in the context of the case. *Mariner Post-Acute Network*, 257 B.R. at 731 (citation omitted). Notably, creditors pay for a debtor's decision to provide risk minimization to counsel because doing so leaves less operating capital for a debtor's reorganization. *Pan American Hosp. Corp.*, 312 B.R. at 712-713.

36.     Here, BLF is seeking approval of three different ways to minimize its financial risk in representing the Debtor in this proceeding – the Guaranty attached to the BLF Retention Agreement, the Evergreen Provisions, and the Monthly Payment Procedures. While the United States Trustee takes no position as to whether the Guaranty should be approved by this Court, BLF actively negotiated for this risk mitigation device.[4] It gives BLF the discretion to seek every fee and expense charged during the Debtor's representation from Clark personally. The Guaranty provides sufficient insulation to BLF with respect to any possible risk of non-payment

---

[4] The United States Trustee understands that the legal fees of small business debtors in this District are often funded, at least in part, by their owners. A per se rule prohibiting payment of a debtor's fees by an insider would hamper access to the bankruptcy system for many such debtors. However, "[i]n situations in which proposed debtor's counsel is being paid from an entity other than the debtor, there is a heightened concern about the 'adverse interest' and 'disinterededness' standards." *In re Dayton Dev. Partners, LLC*, 2025 WL 2253528 at *6 (Bankr. S.D. Ohio August 4, 2025). Courts should scrutinize the arrangement to ensure reasonableness, that it was negotiated in good faith, and that it was necessary to insure counsel's engagement. Id. at *6. Courts have conditioned approval of such arrangements on, among other things, the full disclosure to the debtor and third party payor insider, debtor's express consent to the arrangement, retention of independent counsel by the third party payor insider, understanding of the duty of loyalty owed only to the debtor, and demonstration by the attorney applicant the absence of facts that would create non-disinterededness, conflict, or "impermissible potential for a conflict of interest." *In re Kelton Motors, Inc.*, 109 B.R. 641, 658 (Bankr. D. Vt. 1989). If the Court approves the Guaranty, the United States Trustee believes Clark should be required to first verify in writing that if he pays fees to BLF under the Guaranty, he will have no recourse against the Debtor.

in this case. For the avoidance of doubt, denial of the Guaranty by this Court does not mean that BLF would then be entitled to approval of the Evergreen Provisions or the Monthly Payment Procedures, which should each be denied by this Court for the reasons discussed herein.

**D. Other Terms of the BLF Retention Agreement Cannot be Approved Under 11 U.S.C. § 328(a) Because They Violate the MARPC.**

37. The BLF Retention Agreement contains additional language that essentially deprives the Debtor of certain rights under the provisions of MARPC, which are applicable to all cases before this Court as provided in the Local Rules. *See* D. Md. LBR at Foreword.

38. Provisions of MARPC clearly reflect that the client has the authority to make all decisions about its case and that the attorney is required to explain matters to facilitate the client's informed decisions. *See* MD R ATTORNEYS Rule 19-301.2(a) ("[A]n attorney shall abide by client's decisions concerning the objectives of the representation" and "[a]n attorney shall abide by a client's decision whether to settle a matter"); MD R ATTORNEYS Rule 19-301.4(b) (requires an attorney to explain a matter as reasonably necessary "to permit the client to make informed decisions regarding the representation.")

39. Rule 19-301.2 "requires an attorney to abide by the client's decisions regarding the objectives of representation and to consult with the client as to how to pursue said objectives." *Att'y Grievance Comm'n of Maryland v. Costanzo*, 432 Md. 233, 253 (2013). An attorney's failure to inform a client of case status and/or failure to follow the client's instructions can violate Rule 19-301.2. *Att'y Grievance Comm'n of Maryland v. Hamilton*, 444 Md. 163, 182 (2015); *see also Att'y Grievance Comm'n v. Robbins*, 463 Md. 411, 453-54 (2019) (finding that an attorney violated MARPC Rule 19-301.2 by attempting to control all relevant decision-making).

15

40. Attorneys can violate MARPC Rule 19-301.4 if they fail to communicate information about the status of the case or fail to comply promptly with a client's reasonable requests for information. *Hamilton*, 444 Md at 185; *see also Att'y Grievance Comm'n of Maryland v. Donnelly*, 486 Md. 454, 481 (2024) ("MARPC 19-301.4(a)(1) requires an attorney to communicate with their client regarding any "circumstance with respect to which the client's informed consent ... is required.")

41. The BLF Retention Agreement violates the above provisions of MARPC in stating "[the Debtor] understands it is a breach of [the BLF Retention Agreement] should [the Debtor] *fail to act in compliance with the advice of counsel or fail to actively pursue and prosecute the civil matter upon which [BLF] is engaged*." ECF 21-1 at p. 4 of 5 (emphasis added). This provision can remove decision-making power from the Debtor/client whenever the Debtor disagrees with BLF during the case. A client should not be deemed to breach a retention contract simply by exercising its rights granted by the MARPC to make decisions with respect to its own case. As currently written, the Debtor would be prohibited from – and potentially penalized for – exercising discretion over its case under certain circumstances.

42. Moreover, another provision of the BLF Retention Agreement violates the MARPC because it seeks to limit any future correspondence solely in writing without further oral communication at BLF's sole discretion at any point during or after the proposed representation. ECF 21-1 at p. 2 of 5.

43. MARPC Rule 19-301.4 solely relates to communication with a client. Comment 4 thereto expressly requires that "[c]lient telephone calls should be promptly returned or acknowledged." Comment 5, relating to explaining matters to a client, states that "[t]he guiding principle is that the attorney should fulfill reasonable client expectations for information

16

consistent with the duty to act in the client's best interests, and the client's overall requirements as to the character of representation." BLF is therefore not only required to communicate orally with its clients under the MARPC, but it is also required to explain matters in a way the client requires and that is in their best interests. Eliminating oral correspondence based on "cause" determined solely by BLF plainly violates this rule.

44. Thus, this Court cannot approve the BLF Retention Agreement pursuant to 11 U.S.C. § 328(a) because it contains unreasonable terms and conditions that violate the MARPC.

45. Pursuant to Local Bankruptcy Rule 9013-2, the United States Trustee relies solely upon the present Motion, and no additional memorandum of fact or law will be filed in support.

46. Pursuant to Local Bankruptcy Rule 9013-6, the United States Trustee consents to entry of final orders or judgments by this Court.

WHEREFORE, the United States Trustee respectfully requests that the Court deny the Motion and grant such other and further relief as is just and equitable.

Respectfully submitted,

Dated: January 29, 2026

**MATTHEW W. CHENEY**
Acting United States Trustee, Region Four

By Counsel:

By: */s/ Courtney L. Morgan*
Courtney L. Morgan, Bar No. 17817
Trial Attorney
Office of the United States Trustee
6305 Ivy Lane, Suite 600
Greenbelt, MD 20770
(301) 344-0023
Courtney.L.Morgan@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 29, 2026, a true and correct copy of the Objection to Debtor's Motion to Employ Counsel was served by ECF notification, upon:

- **John D. Burns**  info@burnsbankruptcyfirm.com, burnslaw3@gmail.com;burnslaw6@gmail.com;notices@nextchapterbk.com;pacerecfemails@gmail.com;2634@notices.nextchapterbk.com
- **Melissa Kay Rashbaum**  mrashbaum@burnsbankruptcyfirm.com, pacerecfemails@gmail.com
- **US Trustee - Greenbelt**  USTPRegion04.GB.ECF@USDOJ.GOV
- **Brett Weiss**  brett@bankruptcylawmaryland.com, brettecf@gmail.com;TheWeissLawGroup@jubileebk.net;deb@BankruptcyLawMaryland.com

*/s/ Courtney L. Morgan*
Courtney L. Morgan